The width was not found as a separate measurement but was taken by the use of a board-foot rule, one of which is in evidence as exhibit 7, which is put across the width of the piece and is so made that at the point where the width would ordinarily be taken the surface measurement (width times length) for various given lengths is indicated.

It would appear from Beaman's testimony (R. p. 42) that the thickness was taken on the lumber measured by him on the half inch, that is to say, whenever the fraction of an inch in thickness of a piece was less than one-half, it was tallied as the next lower size on a half-inch scale. We note on collective exhibit 4, the tally sheets that he made on the two carloads on which he took board measurement, that only 2-, 3-, and 4-inch thicknesses are shown, but it may well have been that only those sizes appeared in the bundles he measured.

Kulier's testimony as to the lumber measured under his supervision is similar to Beaman's as to the method of determining length and the use of the board rule in finding surface area. However, as to thickness, it would appear that his measurements were taken on the inch, that is to say, whenever the thickness·of a piece was less than a full inch it was tallied as the next lower size on a one-inch scale. On page 113 of the record he said that the half inch was rarely used in balsa wood, and in measuring illustrative exhibit 1, a piece of balsa wood, which is slightly over 2½ inches thick when measured by an office rule, he called the thickness as 2 inches.

Ginda testified that the method he used was the same as that used by Kulier. Yet, examination of his tally-sheets, collective exhibits 8 and 9, show thicknesses measured by him of 1, 1¼, 1½, 2, 2½, 3, 3½, and 4 inches.

From the foregoing, we think it is apparent that the record shows that the methods used by the three witnesses lacked uniformity to the extent that no one of them may be said with certainty to represent the trade practice. Under such circumstances, we are of the opinion that the plaintiff has failed to make out a 'prima facie case establishing the correct board measurement of any portion of the lumber in the entries before us.

Judgment will therefore be entered in favor of the defendant.·

**No. 50745.**—Protests 54731–K, etc., of Ralph Raminoff et al.   (New York).

Opinion by EKWALL, J.   In accordance with stipulation of counsel the court found that the facts herein agreed upon were such as to bring the case within the holding in *John Barr* v. *United States* (11 Cust. Ct. 88, C. D. 801), which record was incorporated herein.   (See *John Barr* v. *United States*, 324 U. S. 83, decided February 5, 1945.)   In accordance therewith it was held that the currency of the invoices should be converted at the buying rate in the New York market at noon on the day of exportation (the "free" rate of exchange for pounds sterling), as certified by the Federal Reserve bank and set forth by the collector on each of the entries.   The protests were sustained to this extent.

**No. 50746.**—Protests 57746- K, etc., of Benziger Bros., Inc., et al. (New York).

Opinion by EKWALL, J. In accordance with stipulation of counsel the court found that the facts herein agreed upon were such as to bring the case within the holding in *John Barr* v. *United States* (11 Cust. Ct. 88, C. D. 801), which record was incorporated herein. (See *John Barr* v. *United States*, 324 U. S. 83, decided February 5, 1945.) In accordance therewith it was held that the currency of the invoices should be converted at the buying rate in the New York market at noon on the day of exportation (the "free" rate of exchange for pounds sterling), as certified by the Federal Reserve bank and set forth by the collector on each of the entries. The protests were sustained to this extent.

**No. 50747.**—Protests 44788–K/89818, etc., of Judson-Sheldon Corp.; et al. (Chicago, etc.).

Opinion by EKWALL, J. Following the authorities cited in Abstract 15400 the court dismissed the protests.

**No. 50748.**—Protests 78274–K, etc., of Barton & Co., Inc., et al. (New York).

Opinion by EKWALL, J. Following the authorities cited in Abstract 15400 the court dismissed the protests.

BEFORE THE FIRST DIVISION, DECEMBER 7, 1945

**No. 50749.**—Protest 66025–K of China Man Way Fur Corp. (New York).

Opinion by MOLLISON, J. It was stipulated that certain items of the merchandise consist of goatskins similar in all material respects to those the subject of *United States* v. *Winograd Bros., Inc.* (32 C. C. P. A. 153, C. A. D. 302). In accordance therewith the claim for free entry under paragraph 1681 was sustained.

**No. 50750.**—Protest 590743–G of Draeger Shipping Co. (New York).

Opinion by MOLLISON, J. It was stipulated that certain items of the merchandise consist of goatskins similar in all material respects to those the subject of *United States* v. *Winograd Bros., Inc.* (32 C. C. P. A. 153, C. A. D. 302). In accordance therewith the claim for free entry under paragraph 1681 was sustained.

**No. 50751.**—Protests 900175–G, etc., of G. H. & I. Jaffe, Inc., et al. (New York).

Opinion by MOLLISON, J. It was stipulated that certain items of the merchandise consist of goatskins similar in all material respects to those the subject of *United States* v. *Winograd Bros., Inc.* (32 C. C. P. A. 153, C. A. D. 302). In accordance therewith the claim for free entry under paragraph 1681 was sustained.

**No. 50752.**—Protest 446521–G of Draeger Shipping Co. (New York).

Opinion by MOLLISON, J. It was stipulated that certain items of the merchandise consist of goatskins similar in all material respects to those the subject of *Jacobson and Kupitsky* v. *United States* (T. D. 47950). In accordance therewith the claim at 10 percent under paragraph 1420 was sustained.